23-4318

# United States Court of Appeals
## for the
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee*,

– v. –

SAMPSON PEARSON,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

# SUPPLEMENTAL BRIEF OF APPELLANT

D. BAKER MCINTYRE, III
ATTORNEY AT LAW
9109 Southern Pine Boulevard
  Suite 290
Charlotte, North Carolina 28273
(704) 522-8001

*Counsel for Appellant*

COUNSEL PRESS   (800) 4-APPEAL • (809686)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

ARGUMENT .........................................................................................................1

    I.    THE DISTRICT COURT ERRED IN GRANTING A TWO LEVEL OBSTRUCTION OF JUSTICE ENHANCEMENT; UNDER <u>KISOR V. WILKIE</u>, 588 U.S. 558 (2019), : "WILFULLY" OBSTRUCTING OR IMPEDING THE ADMINISTRATION OF JUSTICE IS NOT GENUINELY AMBIGUIOUS THEREBY THIS COURT SHOULD NOT AFFORD DEFERENCE TO THE SENTENCING GUIDELINES' COMENTARY ............................................................2

    II.    THE DISTRICT COURT ERRED IN GRANTING A TWO LEVEL ENHANCEMENT FOR 10 OR MORE VICTIMS; UNDER <u>KISOR V. WILKIE</u>, 588 U.S. 558 (2019), "VICTIM" IS GENUINELY AMBIGUOUS THEREBY THIS COURT SHOULD AFFORD DEFERENCE TO THE SENTENCING GUIDELINES' COMMENTARY ESTABLISHING A VICTIM MUST SUFFER ADVERSE EFFECT MEASURED IN MONETARY TERMS ...................................................................5

CONCLUSION ......................................................................................................8

# **TABLE OF AUTHORITIES**

**CASES**

Arlington v. FCC,
    569 U.S. 290, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013) ............................2

Bowles v. Seminole Rock & Sand Co.,
    325 U.S. 410, 89 L. Ed. 1700, 65 S. Ct. 1215 (1945) ...................................1

Kisor v. Wilkie,
    588 U.S. 558, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019) ..........1, 2, 4, 5, 6, 7

Robinson v. Shell Oil Co.,
    519 U.S. 337, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) ..............................5

Stinson v. United States, 508 U.S. 36, 113 S. Ct. 1913, 123 L.
    Ed. 2d 598 (1993) .........................................................................................1

United States v. Boler,
    115 F. 4th 316 (2024) ................................................................................2, 6

United States v. Mitchell,
    120 F. 4th 1233 (2024) ..............................................................................1, 5

**GUIDELINES**

U.S.S.G. §2B1.1................................................................................................6

U.S.S.G. §2B1.1 cmt. n. 1................................................................................6

U.S.S.G. §2B1.1 cmt. n. 3(A)(i) .......................................................................6

U.S.S.G. §2B1.1 cmt. n. 3(A)(iii) .....................................................................7

U.S.S.G. §2B1.1(b)(2)(A).............................................................................4, 5

U.S.S.G. §3C1.1........................................................................................2, 3, 4

U.S.S.G. §3C1.1 cmt. n. 4(E)............................................................................3

## ARGUMENT

In <u>Stinson v. United States</u>, 508 U.S. 36, 45, 113 S. Ct. 1913, 123 L. Ed. 2d 598 (1993), the Supreme Court found "the guidelines are the equivalent of legislative rules adopted by federal agencies" with "The functional purpose of commentary … is to assist in the interpretation and application of those rules,". Thereby, "provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation'." <u>Id</u>. at 45 (quoting <u>Bowles v. Seminole Rock & Sand Co.</u>, 325 U.S. 410, 414, 89 L. Ed. 1700, 65 S. Ct. 1215 (1945). As such, "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline". <u>Id</u>. at 38. "Thus, under <u>Stinson</u>, the interpretive weight owed to the commentary did not turn on whether the Guideline was ambiguous". <u>United States v. Mitchell</u>, 120 F. 4th 1233, 1238 (2024).

In <u>Kisor v. Wilkie</u>, 588 U.S. 558, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019), the Supreme Court altered <u>Stinson</u>'s analysis by limiting when courts can afford deference to an agency's interpretation of its own regulations, and in turn, to the commentary to the guidelines. Pursuant to <u>Kisor</u> "the possibility of deference can arise only if a regulation is genuinely ambiguous. And when we use that term, we

1

mean it – genuinely ambiguous even after a court has resorted to all the standard tools of interpretation." Id. at 573. "A court must carefully consider the text, structure, history and purpose of a regulation before resorting to deference. If genuine ambiguity remains, the agency's reading must still fall 'within the bounds of reasonable interpretation' " Id. at 559. (quoting Arlington v. FCC, 569 U.S. 290, 296, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013). "In other words, the agency's interpretation of its regulation 'must come within the zone of ambiguity' created by the ambiguous text of the regulation." "United States v. Boler, 115 F. 4th 316, 323 (2024). (quoting Kiser, at 576). If so "a court must make an independent inquiry as to whether the character and context of the agency interpretation entitles it to controlling weight". Kisor, at 576.

**I.     THE DISTRICT COURT ERRED IN GRANTING A TWO LEVEL OBSTRUCTION OF JUSTICE ENHANCEMENT; UNDER KISOR V. WILKIE, 588 U.S. 558 (2019), : "WILFULLY" OBSTRUCTING OR IMPEDING THE ADMINISTRATION OF JUSTICE IS NOT GENUINELY AMBIGUIOUS THEREBY THIS COURT SHOULD NOT AFFORD DEFERENCE TO THE SENTENCING GUIDELINES' COMENTARY.**

U.S.S.G.§3C1.1 provides a 2 level enhancement for willfully obstructing or impeding the administration of justice. Specifically U.S.S.G.§3C1.1 states the enhancement is applied "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or imped, the administration of justice with respect to the investigation, prosecution, or sentencing of the instance offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and

2

any relevant conduct; …). U.S.S.G. §3C1.1 cmt. n. 4(E) provides examples of covered conduct listing "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered for a judicial proceeding;".

The term "willfully" is defined by Black's Law Dictionary as "An act or omission is 'willfully' done, if done voluntarily and intentionally and with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." Black's Law Dictionary 1434 (5th ed. 1979). Thereby the term willfully as used in U.S.S.G. §3C1.1 unambiguously requires an act or omission to be done voluntarily and intentionally with specific intent to disobey or to disregard the law.

In the instant case, the defendant did not willfully obstruct or impede the administration of justice as he did not willfully fail to appear, as ordered, for a judicial proceeding. The night before jury selection, Defendant informed counsel he wanted to appear by Zoom or by phone as he did not have transportation. (JA 17). Counsel for Defendant informed the District Court he spoke with Defendant the night before with Defendant informing counsel he did not have transportation. (JA 17). Counsel then informed the District Court he spoke with Defendant by phone with Defendant informing him he was at his residence requesting the Court provide transportation. (JA 20). At no time was Defendant's failure to appear

3

willful.  Defendant was responsive to counsel's telephone calls indicating he was willing to appear if transportation could be provided.  Defendant's failure to appear for jury selection was not done voluntarily and intentionally with the bad purpose to either disobey or to disregard the law.  Defendant's failure to appear was purely the result of not having transportation on the date of jury selection.

The term "willfully" as used un U.S.S.G. §3C1.1 is unambiguous as it requires a Defendant to act voluntarily and intentionally with the specific intent to do something the law forbids.  Thereby under Kisor, deference can not be provided to the sentencing guidelines' commentary.  In the instant case, Defendant had previously been released on bond and was required to appear for all further proceedings.  Defendant failed to appear for jury selection but by no means was his failure voluntary and intentional with the bad purpose to avoid a court proceeding but rather not having transportation.  Thereby the District Court erred in providing Defendant a two level enhancement.

**II.    THE DISTRICT COURT ERRED IN GRANTING A TWO LEVEL ENHANCEMENT FOR 10 OR MORE VICTIMS; UNDER KISOR V. WILKIE, 588 U.S. 558 (2019), "VICTIM" IS GENUINELY AMBIGUOUS THEREBY THIS COURT SHOULD AFFORD DEFERENCE TO THE SENTENCING GUIDELINES' COMMENTARY ESTABLISHING A VICTIM MUST SUFFER ADVERSE EFFECT MEASURED IN MONETARY TERMS.**

At sentencing the District Court provided Defendant a 2 level enhancement for the offense involving 10 or more victims pursuant to U.S.S.G. §2B1.1(b)(2)(A).

4

(JA 978-979). At issue was whether any person met the guideline requirement of "victim".

When determining the meaning of "victim" the Supreme Court's analysis as required and set forth in Kisor begins with whether the term "victim" as used in U.S.S.G. §2B1.1(b)(2)(A) is genuinely ambiguous. If the term is genuinely ambiguous, Kisor requires consideration of the corresponding sentencing guidelines' commentary.

The "first stop in analyzing the meaning of the relevant Guideline is whether it is genuinely ambiguous." United States v. Mitchell, 120 F. 4th 1233, 1240 (2024). To determine whether a term is genuinely ambiguous we must "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Id. at 1241. (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)).

Under U.S.S.G. §2B1.1(b)(2)(A) a 2 level enhancement is provided if the offense involved 10 or more victims. Webster's New World Dictionary 1582 (2nd ed. 1979) provides varying definitions of the term victim. These definitions range from a person killed as a sacrifice in a religious right, to someone killed, destroyed, injured, or otherwise harmed by an act, condition, or circumstance, to a person who suffers some loss especially by being swindled.

5

The commentary to U.S.S.G. §2B1.1 provides definitions in application note 1 setting forth a "victim" means any person who sustained any part of the actual loss. By the commentary setting forth a victim requires "actual loss" further ambiguity as to the term "victim" exists. In light of the multiple possibilities of a person becoming a "victim" through varying types of "loss" genuine ambiguity exists as to the term "victim".

As genuine ambiguity exists as to the Guidelines' definition of "victim" the next step is to determine whether the Guidelines' commentary definition of "victim" "come[s] within the zone of ambiguity the court has identified after employing all its interpretive tools." Kisor, at 576. This requires review of "whether the commentary falls 'within the bounds of reasonable interpretation' by the relevant agency; here, the Commission." Boler, at 327 (quoting Kisor, at 576. "To make this assessment, we consider whether the commentary by the Commissions' 'official position,' 'implicate [s] its substantive expertise' in some way, and reflects the 'fair and considered judgment' of the Commission such that it is not simply a 'convenient litigating position." Boler, at 328.

The sentencing guidelines provides a 2 level enhancement for 10 or more "victims". U.S.S.G. §2B1.1 cmt. n. 1 specifically defines "victim" as any person who sustained any part of the actual loss. U.S.S.G. §2B1.1 cmt. n. 3(A)(i) defines "actual loss" to mean the reasonably foreseeable pecuniary harm that resulted from

6

the offence. U.S.S.G. §2B1.1 cmt. n. 3(A)(iii) defines "pecuniary harm" to mean harm that is monetary or that otherwise is readily measurable in money. Within the sentencing guidelines, the Commission provided specific definitions required for someone to be a victim. Not only did the Commission provide a definition for victim, the Commission went on to provide the required definition of "actual loss" and further defined the requirement of "pecuniary harm". As the Commission specifically defined each of these terms in an attempt to provide clarity to the term "victim" the commentary's definition of "victim" falls within the zone of ambiguity such that the commentary's definitions should be given deference.

As the commentary's definition of "victim" falls within the zone of ambiguity, the final step requires "an independent inquiry into whether the character and context … entitles it to "controlling weight". Kisor, at 576. The Commission's commentary is detailed in its requirements for a person to be considered a "victim". The sentencing commission's expertise is detailed as the terms "victim", "actual loss", and "pecuniary harm" all are specifically defined to provide further understanding as to the sentencing Commission's intent to provide a sentencing enhancement when an offense involved 10 or more "victims". As such, the commentary's character and context entitles it to controlling weight.

At sentencing the District Court provided a 2 level enhancement for 10 or more victims. Under Kisor the term "victim" is genuinely ambiguous. As such,

7

this Court should afford deference to the sentencing guidelines' commentary establishing a victim must suffer adverse effect measured in monetary terms. The sentencing guidelines' commentary provides that a "victim" must sustain "actual loss" which is calculated as the reasonably foreseeably pecuniary harm. "pecuniary harm" means harm that is monetary or that is otherwise readily measurable in money. In the instant case, each of Northwestern Mutual Life's clients were fully reimbursed. When providing deference to the sentencing guidelines' commentary a victim must suffer adverse effect measured in monetary terms. When considering <u>Kisor</u>, the District Court erred in granting a 2 level enhancement for 10 or more victims as the term "victim" is genuinely ambiguous.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests the case be remanded to the District Court for re-sentencing.

Respectfully submitted this the 31st day of July, 2025.

s/D. Baker McIntyre III
Attorney Bar Number: 19168
Attorney for Defendant-Appellant
9101 Southern Pine Blvd., Suite 290
Charlotte, NC  28273
Telephone: 704/522-8001
Fax #704/522-0533
E-mail: baker@mcintyre3.com

8

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23-4318     Caption: US v. Sampson Pearson

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

> **Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

> **Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

> **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains __1,818__ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using __Microsoft Word 2016__ [*identify word processing program*] in __14 point Times New Roman__ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) D. Baker McIntyre III

Party Name Appellant

Dated: 7/31/2025